IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CONNIE L. COTTRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-07-462-D |
| | ) | |
| MICHAEL B. DONLEY, Secretary of | ) | |
| U. S. Department of the Air Force, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court is the defendant, Secretary of the Air Force's, Motion for Summary Judgment [Doc. No. 23]. The motion seeks summary judgment on each of plaintiff's claims of sex discrimination, age discrimination, and retaliation for prior participation in protected activity. The plaintiff has responded [Doc. No. 31], and the defendant has replied [Doc. No. 38]. Thus, the matter is at issue.

FACTS

The briefs and attached materials submitted by the parties establish the following material facts.[1] Plaintiff is a female civilian employee of Defendant, working as an Aircraft Mechanical Parts Worker Leader at Tinker Air Force Base in Oklahoma City. At the time of the events in question Plaintiff was over 40 years old. In September of 2004 Plaintiff asked to be considered to fill a temporary position as an Aircraft Mechanical Parts Worker Supervisor.

On September 27, 2004, a Candidate Referral Certificate was issued regarding the supervisor position. The certificate listed in alphabetical order fifteen qualified employees for consideration,

---

[1] *The material facts set forth in Defendant's brief are largely undisputed by Plaintiff. As noted, infra., Plaintiff's limited attempts to dispute such facts are ineffective, either because they are based on bare, unsupported denials or because there is insufficient evidence in the record to create a dispute.*

which included Plaintiff as well as the individual ultimately selected for the position, Seth Vreeland, a male employee who was 29 years old at the time of the selection. Mr. Vreeland, like Plaintiff, was an Aircraft Mechanical Parts Worker Leader.

After the certificate was issued, three of the listed candidates withdrew from consideration. Of the twelve remaining, there were five females and seven males. Six of the twelve candidates were 40 years old or older.

The selecting official for the position was Theodore Sharpe, a unit supervisor. Mr. Sharpe, himself over age 40 at the time of the selection, was the second-line supervisor of both Plaintiff and Mr. Vreeland, the person selected for the position. Mr. Sharpe has, on other occasions, selected for promotion women and individuals age 40 or older.

The consideration process consisted of two parts: Part I, a records review and an assignment of a numerical score based on such review; and Part II, an interview of each candidate and associated numerical score. Mr. Sharpe conducted the Part I records review and assigned the score achieved by each candidate; such score represented about 39% of the total possible points that could be obtained by a candidate during the selection process. The Part II interview represented about 61% of the total possible points, and was conducted by a panel of managers. Each manager separately scored each interviewee. Here, the interview panel included Mr. Sharpe, Sheri Opat (a female over age 40), and Stephen Porter (a male over age 40).

The maximum number of points available in the Part I process was 76. After the required records review Mr. Sharpe awarded 52 points to Plaintiff. His review of Mr. Vreeland's records resulted in a score of 55 points. Following the completion of the Part I process, Mr. Vreeland was ranked first among the twelve candidates, and Plaintiff was ranked second, with only three points

separating them.[2]

The maximum number of points possible during Part II of the process was 120; individual scores for Part II were calculated by averaging the scores of the interviewing panel members for each candidate. The aggregate maximum possible score from Part I and Part II was 196 points.

During the interview all candidates were asked the same four questions; each candidate received the questions about fifteen minutes in advance of the interview. All three interviewers were present during each interview, and scored each candidate independently. Neither Ms. Opat nor Mr. Porter knew the identity of the various candidates in advance of the interviews; nor did they know the scores Mr. Sharpe had attributed to each candidate as a result of the Part I records review.[3]

The Part II interviews took place over two days in October 2004. Mr. Sharpe compiled and calculated the Part II scores after the conclusion of all interviews. Neither Ms. Opat nor Mr. Porter took part in the calculations after they turned in to Mr. Sharpe their individual scoring sheets for each of the candidates. Plaintiff's Part II interview score was 36, which ranked her seventh out of twelve candidates. Mr. Vreeland's Part II score was the highest of the candidates – 74.33. The second, third, fourth, and sixth-ranked candidates in the Part II process were females, one of whom was age 40 or older. The fifth-ranked candidate was a male, age 40 or older.[4]

---

[2]*Although Plaintiff does not dispute the numerical results of the Part I review, she does purport to dispute the fairness of the process, in part because of her apparent claim that Mr. Sharpe reviewed Mr. Vreeland's records after he had reviewed Plaintiff's records and assigned her score. However, this contention is not accompanied by a citation to the record and it is not specifically addressed in Plaintiff's affidavit attached to her response brief. In response to a summary judgment motion supported by proper evidence, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).*

[3]*Plaintiff, again, does not effectively dispute these facts; she simply denies them based on a lack of information sufficient to admit or deny. This is not sufficient to raise an issue with respect to such facts. See Fed. R. Civ. P. 56(e)(2).*

[4]*Plaintiff's denial based on lack of information does not effectively dispute these facts. Fed. R. Civ. P. 56(e)(2).*

Each of the interviewers assert that Plaintiff performed poorly in the interview. Mr. Porter asserts via affidavit "she did not state [her knowledge and experience] in the interview as well as Mr. Vreeland did." *See* Porter affidavit, attached to Defendant's brief. Ms. Opat similarly stated "[i]t is seldom that I give anyone a zero. I gave her 3 zeros, which tells me that she did not interview well at all, in management philosophy, customer service and communication." *See* Opat affidavit, attached to Defendant's brief. Likewise, Mr. Sharpe asserts that Mr. Vreeland's interview performance exceeded that of Plaintiff. *See* Sharpe affidavit, attached to Defendant's brief.

Based on his achievement of the highest aggregate score, 129.33 points, Mr. Vreeland was selected by Mr. Sharpe for the temporary position of Aircraft Mechanical Parts Worker Supervisor. Mr. Sharpe, Ms. Opat, and Mr. Porter all assert that no one suggested or directed that they score Plaintiff lower in order to prevent her from being selected for the position, nor were they coerced to favor Mr. Vreeland. All interviewers assert they scored and ranked all candidates based only upon the individual performances during the selection process. Plaintiff does not directly dispute these assertions, but instead contends that they are pretextual, and that the real reason she was not selected was due to retaliation for her prior engagement in protected workplace activity. This contention is discussed more fully, *infra*.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed. R. Civ. U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, a plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for

her. *Id.* The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. However, Defendant need not disprove Plaintiff's claim; it must only point to "a lack of evidence" on an essential element of that claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to Plaintiff to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find for her; conclusory arguments are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein. *Alder*, 144 F.3d at 671-72. Nor is it the Court's responsibility to attempt to find evidence which could support Plaintiff's position. *Id.* at 672. A genuine dispute requires more than "some metaphysical doubt" as to the material facts. *Anderson*, 477 U. S. at 260-261.

## DISCUSSION

In analyzing Plaintiff's claims the Court applies the shifting burden of proof scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U. S. 792 (1973).[5] This approach requires Plaintiff to first establish a *prima facie* case of discrimination/retaliation. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997). If Plaintiff is successful, the burden shifts to Defendant to offer a legitimate reason for the adverse employment action. *Id*. Once Defendant offers such a reason, the burden then shifts back to Plaintiff to show that there is a genuine dispute of material fact as to whether Defendant's proffered reason for the challenged action is pretextual.

---

[5]*The parties are in agreement that this burden-shifting scheme is the proper analysis, presumably due to the recognition that direct evidence of discrimination or retaliation is lacking in this case.*

*Id.*

      1.  Plaintiff's Claims of Sex and Age Discrimination

Defendant concedes, for purposes of the instant motion, that Plaintiff has made a *prima facie* case regarding her claims of sex and age discrimination. Defendant's principal brief, p. 16. Thus, the analysis regarding these claims begins at step two of the *McDonnell Douglas* process.

The establishment of a *prima facie* case creates a presumption that the employer discriminated against the employee. *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 558 (10th Cir. 1996). The employer's burden then becomes one of production: the employer must produce evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Id.* If the employer meets its burden, the presumption of discrimination drops from the case, and the matter then becomes like any other civil case where the plaintiff at all times bears the ultimate burden of persuasion. *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1396 (10th Cir. 1997).

Here, Defendant has undoubtedly met his burden of production. The record reflects ample evidence that the reason Plaintiff was not selected for the temporary supervisor position was that Mr. Vreeland performed better, and thus received a higher score, during both parts of the selection process, but primarily during the Part II interview phase.

Following the Part I records review, Plaintiff was ranked second among the twelve candidates, and trailed Mr. Vreeland by only three points. But her relatively poor performance during the Part II interview, and resulting low scores by each of the three interviewers, substantially separated her from the leader. Each interviewer has provided evidence via affidavit that Plaintiff, like all other candidates, was scored independently and without knowledge of the results of the Part I records review. Likewise, each interviewer asserts that in scoring Plaintiff they were not

influenced by the other members of the panel, or any other factor beyond Plaintiff's performance in the interview. Plaintiff was asked the same interview questions as the other candidates, and was given the same amount of time to consider the questions in advance of the interview. Thus, Defendant has produced evidence that the employment action in question was the result of legitimate, nondiscriminatory reasons. This finding necessitates consideration of the next step in the *McDonnell Douglas* scheme.

To show that Defendant's proffered reasons are pretextual, Plaintiff "'must produce evidence of such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Fye v. Oklahoma Corporation Commission*, 516 F.3d 1217, 1228 (10th Cir. 2008) (internal citation omitted). Thus, in order to survive summary judgment, Plaintiff must produce evidence from which a reasonable factfinder could believe that Defendant's proffered reason is false. *Conner*, 121 F.3d at 1396. Such evidence is not present in the record before the Court.

Plaintiff takes issue with the manner in which the Part I score was determined, but her argument is merely conclusory and lacks any specific reference to errors committed or flaws in the calculation. Moreover, Plaintiff acknowledges that even if she would have been scored in Part I as she contends she deserved, the result after Part II would place her in a tie for second place. Plaintiff's brief, p. 11.

Plaintiff next contends "[i]t would have been easy for Mr. Sharpe to advise the interview panel to give Plaintiff low scores, or artificially inflate Mr. Vreeland's score ...." Plaintiff's brief,

p.12. This is pure conjecture. Plaintiff points to no evidence that such manipulation occurred, and there is no evidence – save for a nebulous, undated comment Plaintiff made to Mr. Sharpe about needing to "go to EEO" for an undisclosed purpose – that remotely suggests Mr. Sharpe had any motive or intent to harm Plaintiff's promotion chances.

Plaintiff's remaining relevant contentions regarding pretext concern her prior protected activity. These contentions focus primarily on Ms. Opat, and Plaintiff's assertion that Ms. Opat scored Plaintiff low in the Part II interview phase in retaliation for such prior protected activity. It should be initially noted here that Plaintiff was also scored significantly lower than the ultimate selectee by Mr. Sharpe and Mr. Porter in the interview phase. Although Plaintiff contends that Mr. Sharpe and Mr. Porter "were also knowledgeable of Plaintiff's prior protected activity as they participated in a grievance regarding overtime in 2003 involving Plaintiff..." (Plaintiff's brief, p.15), the evidentiary source cited by Plaintiff – her own affidavit – is silent on the issue.

As to Ms. Opat, Plaintiff asserts that her prior protected activity was directly against Ms. Opat; however, the evidentiary materials submitted reflect that Plaintiff served as a union representative for two fellow employees, Ms. Oliver and Mr. East, regarding whom Ms. Opat had been a second-line supervisor. In 2004 Ms. Oliver made allegations of harassment against a co-worker (not Ms. Opat), but contended that Ms. Opat did not take appropriate remedial action. *See* Oliver affidavit, attached to Plaintiff's brief. Ms. Oliver states that sometime in 2004, but before Plaintiff interviewed for the position involved in this case, she informed Ms. Opat that Plaintiff would be her union representative. However, no evidence is presented as to the date of these contacts relative to Plaintiff's non-selection for promotion, and the record is devoid of information regarding Ms. Opat's response or conduct in connection with the matter involving Ms. Oliver.

Moreover, it is undisputed that in connection with that matter Ms. Opat never met with Plaintiff, or had any direct contact with her whatsoever. The record reflects that the purported protected activity regarding Mr. East is even more attenuated. Mr. East filed a grievance against his new supervisor after he had transferred out of Ms. Opat's unit sometime in 2004. *See* Opat affidavit, attached to Defendant's brief.

This purported evidence of a discriminatory motive on the part of Ms. Opat – one of three interviewers to consider Plaintiff – is so scant that, at best, it amounts to a mere "scintilla" of evidence. As such, it falls short of evidence of such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in Defendant's proffered legitimate reasons for its action which would enable a reasonable factfinder to rationally find them unworthy of credence, and hence infer the Defendant did not act for the asserted nondiscriminatory reasons. *See Fye v. Oklahoma Corporation Commission*, 516 F.3d 1217, 1228 (10th Cir. 2008). Thus, summary judgment in favor of Defendant is appropriate on Plaintiff's claims of sex and age discrimination.

2. Plaintiff's Claim of Retaliation

To establish a *prima facie* case[6] of retaliation, Plaintiff must show that she: 1) engaged in protected activity; 2) suffered an adverse employment action; and 3) there was a causal connection between the protected activity and the adverse action. *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008).

For purposes of the instant motion, Plaintiff has sufficiently established the first two elements of her *prima facie* case. However, evidence of a causal connection between the protected

---

[6]Although not entirely clear from the briefing, it appears that Defendant's concession of Plaintiff's <u>prima facie</u> case does not extend to Plaintiff's retaliation claim. This seems to be acknowledged by Plaintiff. <u>See</u> Plaintiff's brief, p. 17.

9

activity and Plaintiff's non-selection for promotion is scant.

To establish a causal connection, Plaintiff may proffer "'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Proctor v. United Parcel Service*, 502 F.3d 1200, 1209 (10th Cir. 2007) (internal citation omitted). Plaintiff's unsupported contention that protected activity in 2003 involving Mr. Sharpe and Mr. Porter, at least nine months before the selection process in question, is clearly well beyond the temporal limits recognized as giving rise to an inference of causal connection. *See Proctor*, 502 F.3d at 1208 ("Four months is too large a time gap to establish a causal connection."). The protected activity which allegedly involved Ms. Opat occurred sometime in 2004, but the record is devoid of details regarding the temporal proximity of that activity and Plaintiff's non-selection; the record simply does not allow for the determination of that time period. Similarly, Plaintiff's unsupported assertion in her brief that she was engaged in discrimination litigation against Defendant through 2005 is nowhere supported in the record. Thus, Plaintiff's efforts to establish proximity, and, thereby, the causation element of her *prima facie* case, fail.

The passage of time, however, does not necessarily bar a plaintiff's retaliation claim if additional evidence establishes the retaliatory motive. *Proctor*, 502 F.3d at 1209. On the present record, Plaintiff has failed to muster such additional evidence.

Plaintiff submits no evidence that she was treated differently in any respect as a result of her protected activity. There is no evidence that any of the three interviewers ever made statements to Plaintiff – or anyone else – indicative of retaliatory motive. With respect to Ms. Opat, the only interviewer whose involvement with Plaintiff vis- a- vis protected activity was not utterly attenuated, there is no evidence in the record that she ever met with Plaintiff or had any significant contact

regarding Plaintiff's representation of other employees. Nor is there any evidence tending to suggest that Ms. Opat held a grudge against Plaintiff as a result of such protected activity. The record is simply devoid of evidence sufficient to allow a reasonable factfinder to conclude in favor of Plaintiff on the causal connection element. Therefore, summary judgment in favor of Defendant is appropriate on Plaintiff's retaliation claim.

Even assuming Plaintiff could establish a *prima facie* case of retaliation, for the same reasons set forth *supra* in connection with the second and third stages of the *McDonnell Douglas* analysis regarding Plaintiff's sex and age discrimination claims, summary judgment in favor of Defendant would be appropriate.

## CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment is GRANTED, and judgment shall be entered accordingly.[7]

IT IS SO ORDERED this   17th   day of April, 2009.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[7] *In light of the Court's ruling, the parties' other pending pretrial motions are rendered moot.*